THE STATE, EX REL. HENRY S. LANGSTAFF, TREASURER OF THE CITY OF RAHWAY, v. JOHN J. DALY, MAYOR OF THE CITY OF RAHWAY.

1. Twenty-seven bills were contracted by the finance committee of the city of Rahway, and, on being presented to the city treasurer without affidavit, were paid by him. He then presented to the common council a single bill in his own favor for the aggregate of the sums so

paid, with his own affidavit that it was just and true. *Held,* that this bill did not comply with the act of April 4th, 1871. *Rev., p.* 1371. *Held, also,* that the treasurer had neglected his official duty to audit said bills and report thereon to the common council, by paying the same before making such report, inasmuch as he had thereby disqualified himself from auditing and reporting upon the bills impartially.

2. The bill of the treasurer, presented as aforesaid, was ordered paid by the common council by a vote of less than three-fifths of the whole number of councilmen. *Held,* that the mayor, in view of section 35 of the city charter (*Pamph. L.* 1865, *p.* 499), was not legally bound to sign a warrant drawn in pursuance of such order, and a *mandamus* would not be awarded to compel him to do so.

On application for *mandamus.*

Argued at June Term, 1886, before Justices DIXON and REED.

For the relator, *G. Collins.*

For the respondent, *J. H. Stone.*

The opinion of the court was delivered by

DIXON, J.    The relator, treasurer of the city of Rahway, prays a *mandamus* directing the defendant, mayor of the city, to sign a city warrant, drawn in his favor, for the following bill:

"RAHWAY, N. J., Jan. 26th, 1886.

*"Mayor and Common Council of the City of Rahway,*
" To H. S. LANGSTAFF, Treas., Dr.

"Amount paid for expenses in compromise matter, by order of finance committee of council, as per vouchers attached ......... ......... ........., ......... ...........$512  47

"Approved:

" JNO. M. TUFTS, JR.<br>" EDWARD CROLIUS.

"Allowed:

" H. S. LANGSTAFF, *Auditor.*

" State of New Jersey, Union county, *ss.*—On this 26th

day of January, 1886, personally appeared before me H. S. Langstaff, treasurer, who, being duly sworn, on his oath says that the within bill, amounting to five hundred and twelve dollars and forty-seven cents, is just and true, and due to him from the city of Rahway.

"H. S. LANGSTAFF.

"Sworn and subscribed before me this 26th day of January, 1886.

"FRANKLIN MARSH, City Clerk.

[Endorsed]:
> "201.                    512.47.
> "H. S. LANGSTAFF, Treas.
> "Exp. of compromise to date.
> "Contingent."

The circumstances which gave rise to this bill are these: On December 12th, 1882, in furtherance of an effort to compromise the city debt, the common council voted "that the matter of expense in the city compromise matter be left to the judgment of the finance committee." Under this authority the finance committee employed Mr. Berry to aid them, agreeing to pay him $10 a day for his services. From time to time Mr. Berry presented to the committee his bills for services and incidental expenses. The committee ordered the relator, as city treasurer, to pay the same, and thereupon he did so. Twenty-five such bills were paid. A bill of Mr. Mansfield and one of Mr. Compton were incurred and paid in like manner. These twenty-seven bills make up the present claim of the relator. Only one of them, being for $31, is sworn to by the original creditor. When the relator's bill was presented to the common council it was ordered paid by a vote of seven ayes against five nays, the council consisting of twelve members.

The city charter (Pamph. L. 1865, p. 499, § 41), enjoins upon the mayor the duty of signing warrants upon the treas-

urer, and the duty is so far ministerial that in a proper case it will be enforced by *mandamus;* but if the warrant has not been ordered and drawn in accordance with law, then the court will not command the mayor to sign it. *Nicholson Pavement Co.* v. *Mayor of Newark,* 6 *Vroom* 396 ; *City of Paterson* v. *Barnet,* 17 *Vroom* 62.

We think the warrant now in question was not ordered in compliance with statutory regulations. "An act in relation to the expenditure of public money by municipal corporations," approved April 4th, 1871 (*Rev., p.* 1371), makes it unlawful for any common council to disburse the city's money unless the person claiming or receiving the same shall first present a detailed bill of items, with his affidavit that the same is correct. The bill for which this warrant was drawn does not comply with this law : it contains no details, nor is it verified as the act requires ; the affidavit of Mr. Langstaff annexed to it merely indicates what sum he paid as treasurer, but does not purport to show what sum the city owed, as the legislature manifestly designed that the oath of the claimant should.

We think also that this bill came before the council in a manner which evaded the plain intent of section 35 of the city charter. *Pamph. L.* 1865, *p.* 499. According to its terms the city treasurer, " as auditor of accounts, shall receive all accounts against the city, * * * examine them and ascertain if they are correct, and determine what amount, if any, shall be allowed thereon, and report the same to the common council ; he shall keep a book or books of all accounts brought to him to be audited, in which shall be entered the name of the claimant, the nature of the claim, work done or service rendered, and the amount allowed thereon, which book or books shall be at all times open to the inspection of the public ; and the common council shall have authority to reject or pay the amount allowed on any account audited by said treasurer ; but no account, and no portion of any account, disallowed by said treasurer, shall be ordered to be paid by the common council except by a vote of three-fifths of the whole number

of councilmen elected." The duty thus imposed upon the treasurer is *quasi* judicial, and therefore one for the due performance of which he was bound to keep himself disinterested, at least until he reported to the common council the claim which he allowed. But instead of this he paid the claim first, and so made it in a measure his own, and then attempted to determine and report upon its propriety. This is not, either in form or substance, the procedure which the charter prescribes, and it was not the duty of the mayor to sanction it by his signature. Doubtless there may be claims against the city which the treasurer cannot disinterestedly audit, such as his own claim for salary or for petty office expenses, and such claims must be regarded as standing outside of these provisions. But there is no reason for putting the debts incurred by the finance committee in performance of its duties upon any other footing, with respect to this function of the treasurer, than that occupied by all ordinary claims. These claims, then, being of such a character that they ought to have been audited by the treasurer before presentation to the council, and the treasurer having voluntarily put himself in a position where he could not properly audit them, the best to be said of them is that they came before the council as if disallowed by the treasurer. So regarded, the council failed to order them paid by the requisite votes, three-fifths of twelve.

The sixth section of "An act in relation to encumbered cities," approved March 17th, 1881 (*Pamph. L., p.* 127), does not seem applicable to this controversy. It relates to the mode of providing funds, but not of disbursing them.

The *mandamus* must be refused.